**Gary HOLLAND, Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 40444.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 3, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 18, 1979.

Application to Transfer Denied
June 19, 1979.

Kohn, Shands, Elbert, Gianoulakis & Giljum, Thomas J. Frawley, St. Louis, for movant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Majorie Haines, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., Edward J. Rogers, St. Louis, for respondent.

CRIST, Judge.

Rule 27.26 motion. Movant seeks to vacate a jury conviction of rape and resulting four-year sentence. He appeals from a denial of his motion after an evidentiary hearing. We affirm.

He complains: He was denied effective assistance of counsel. His lawyer failed to conduct an independent factual investigation to corroborate his defense of lack of identification. He was prejudiced because he was denied witnesses who knew that he had a tattoo on his arm prior to the rape for which he was convicted. And the State had the burden to prove absence of prejudice. We disagree.

Appellant review is limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous. Rule 27.26(j). A finding is "clearly erroneous" if, after reviewing all the evidence, the court is left with the definite and firm conviction that a mistake has been committed. Due regard must be given to the trial judge's opportunity to hear the witnesses and to defer to his determination of credibility unless it clearly and convincingly appears that he has abused his discretion. *Bennett v. State*, 549 S.W.2d 585, 586 (Mo.App.1977). The ultimate test in determining the adequacy of legal representation is whether the efforts and conduct of counsel so prejudiced movant that he was denied a fair trial. *Grant v. State*, 561 S.W.2d 739, 741 (Mo.App.1978).

The controversy centers on the question of a tattoo on the left arm of movant. The rape occurred on April 2, 1973. The victim did not remember seeing a tattoo on her attacker's bare, left arm on the day of the rape, nor at the line-up when she identified movant as her assailant. Two other witnesses, who saw movant and the victim just prior to the rape, also identified movant at the line-up.

Three arresting officers did not notice the tattoo at the time of the arrest or at the line-up. A juvenile officer saw movant on April 11, 1973 and on another occasion one or two days thereafter. The first time he observed markings on movant's arm that appeared to be written in ink. He indicated a difference in the tattoo on the second occasion, with fresh scratchings and dried blood being noticeable after April 11, 1973.

Movant had one witness at his rape trial testify that he had a tattoo on April 12, 1973. The State then put on three rebuttal witnesses who testified that they did not notice a tattoo on April 11, 1973.

In closing argument, the State commented about the lack of evidence in movant's case showing that he had a tattoo on April 2, 1973, the day of the rape.

The question of identification was crucial not only to the defense but to the prosecution's case. Imbedded in the identification issue was the existence of a tattoo at the time of the rape.

Defendant was confined at the Missouri State Training School at Booneville just prior to the rape. He testified at the hearing that he gave his lawyer the names of three witnesses who would verify that he had a tattoo at Booneville prior to the time of the rape. One such witness did so testify at the Rule 27.26 hearing. None of these witnesses had testified at the rape trial.

Movant's trial lawyer told a different story. He said that movant had originally told him the tattoo was self-inflicted. Later, movant told him there was a team leader at Booneville who might be able to testify for him. The lawyer made a telephone call to Booneville but was unable to obtain any information.

There were two rape trials, the first having resulted in a hung jury. The defense strategy was to use a doctor and lawyer to establish the existence of the tattoo rather than the movant's comrades at Booneville. The doctor's death prevented his testifying at the second trial, but he again called the public defender who had been assigned to the Juvenile Court who testified that movant had a tattoo on his arm on April 12, 1973.

Movant's records at Booneville did not reveal that he had a tattoo on his left arm. The court found: Movant did not give his attorney the names of the three witnesses. A call to Booneville would not have disclosed their names from his file or that they had information relevant to the tattoo. It thus concluded that he did not sustain his burden of proving ineffective assistance of counsel.

■■ Movant bears a heavy burden to overcome a presumption of competency and counsel will not be held incompetent by reason of what, in retrospect, appears to be an error of judgment. *Hall v. State*, 496 S.W.2d 300 (Mo.App.1973). Counsel's efforts on movant's behalf did not result in a substantial deprivation of movant's right to a fair trial. *Haynes v. State*, 534 S.W.2d 552, 554 (Mo.App.1976).

Using hindsight, it could well be argued that movant's counsel might have done more to ascertain whether the tattoo was present while movant was at Booneville. However, absent the names of people who might provide such information, even a trip to Booneville might not have revealed the information. The file of movant at Booneville was silent as to the existence of the tattoo. The medical examiner did not reveal it at the time of his admittance at Booneville, nor did the file show it on his discharge. Concerning the efforts made by movant's counsel with respect to pre-trial proceedings and trial tactics, coupled with movant's original story that the tattoo was self-inflicted, we cannot say that he was denied effective assistance of counsel under our standard of review.

The judgment is affirmed.

REINHARD, P. J., and GUNN, J., concur.